## COMMONWEALTH of Kentucky, Appellant,

v.

## Martin J. REED, Appellee.

Court of Appeals of Kentucky.

Oct. 26, 1984.

Discretionary Review Denied Dec. 17, 1984.

Joseph Gutmann, Sp. Asst. Atty. Gen., Louisville, David Armstrong, Atty. Gen., Frankfort, for appellant.

Frank W. Heft, Jr., Daniel Goyette, Louisville, for appellee.

Before COOPER, HOWARD and LESTER, JJ.

COOPER, Judge.

This is an appeal from an order of the trial court ruling that the appellee, although pleading guilty to a charge of robbery under KRS 502.020, was not precluded from being granted probation even though his codefendant, armed during the robbery, was. KRS 533.060. On appeal, the single issue is whether the trial court erred, as a matter of law, in so ruling. Reviewing the record below, we affirm.

The facts relative to this action are as follows: In April of 1983, the appellee, Martin J. Reed, and a co-defendant, Kenneth Gartin, were indicted on a charge of robbery in the first degree (with complicity) of Nate's Liquors. Additionally, Gartin was indicted on a charge of Resisting Arrest and Carrying a Concealed Deadly Weapon. Thereafter, in August of 1983, both appellee and codefendant entered pleas of guilty to the charges involved. Gartin was sentenced to ten years in the state penitentiary. The appellee was also sentenced to ten years' imprisonment, yet his sentence was probated for a period of five years. As a result of the Commonwealth entering an objection to the trial court's probation of the appellee, the trial court issued findings of fact and conclusions of law ruling that although the appellee had entered a plea of guilty to first-degree robbery and complicity, he was nonetheless eligible for probation under KRS 533.060(1). Specifically, it ruled that since the appellee, "was not in actual possession of the firearm used in the robbery even though he acted in complicity with the defendant, Kenneth M. Gartin, KRS 533.-

060(1) does not apply through KRS 502.-020." It is from such ruling that the Commonwealth now appeals.

Section 2 of KRS 533.010 establishes specific criteria for a trial court to consider in determining whether a defendant is to be probated:

(2) Before imposition of a sentence of imprisonment the court shall consider the possibility of probation or conditional discharge. After due consideration of the nature and circumstances of the crime and the history, character and condition of the defendant, probation or conditional discharge should be granted unless the court is of the opinion that imprisonment is necessary for protection of the public because:

(a) There is substantial risk that during a period of probation or conditional discharge the defendant will commit another crime; or

(b) The defendant is in need of correctional treatment that can be provided most effectively by his commitment to a correctional institution; or

(c) A disposition under this chapter will unduly depreciate the seriousness of the defendant's crime.

Under the language of the statute, probation is to be determined on an individual, ad-hoc basis. The type of crime involved is one factor for a trial court to consider in determining whether to grant probation. The power to grant probation is not inherent in the courts, but is conferred by the legislature. *See Dissent, Haymon v. Commonwealth,* Ky., 657 S.W.2d 239 (1983). Consequently, a trial court must construe both the *language* and *intent* of the legislature in considering the possibility of either probation or conditional discharge for a specific defendant. As such, the facts and circumstances relating to a particular crime must be examined in determining whether probation is appropriate or inappropriate.

As set forth by the trial court, the facts surrounding the robbery are undisputed: Gartin, armed with the pistol, held the store clerk at bay while the appellee, who was unarmed, took money from the cash register. At no time was the appellee in possession of the firearm during the commission of the robbery. The question therefore is whether Gartin's use of the firearm should be imputed to the appellee and, as a result, trigger the application of KRS 533.060 to deny the appellee probation.

In *Fultz v. Commonwealth,* Ky.App., 596 S.W.2d 28 (1980), two codefendants who pleaded guilty to second-degree robbery were found to be eligible for probation even though a third codefendant, who was armed, was not. The Court, in rejecting the defendant's argument that the Commonwealth had failed to prove the pistol with which he was armed was "a weapon from which a shot or projectile may be discharged that is readily capable of producing death or other serious physical injury," implicitly recognized the argument—as stated by the Commonwealth—that the two codefendants were eligible for probation under KRS 533.060 since they were not "the armed individual."

In *Haymon, supra,* the Court specifically recognized the ambiguity contained in the statute. There, the ambiguous term was the word "use" contained in subsection (1) of the statute:

(1) When a person has been convicted of an offense or has entered a plea of guilty to an offense classified as a Class A, B, or C felony and the commission of such offense involved the use of a weapon from which a shot or projectile may be discharged that is readily capable of producing death or other serious physical injury, such person shall not be eligible for probation, shock probation or conditional discharge.

In *Haymon,* the Court ruled that although the defendant had fled the scene of a burglary armed with a shotgun, he had not committed an offense involving the "use" of a weapon as specified in the statute. Accordingly, it reversed the action of the trial court in denying the defendant probation. In so ruling, it effectively held that

any ambiguity contained in the statute would be resolved in favor of the defendant:

> We conclude that the phrase "use of a weapon" as it is used in KRS 533.060(1) is ambiguous in that it is subject to two entirely different but nevertheless logical interpretations. It is not possible to determine which meaning the General Assembly intended to be given to the phrase "use of a weapon" and for that reason the movant is entitled to the benefit of the ambiguity. *Id.* at p. 240.

Here, we find such language to be controlling. Specifically, we find that the ambiguity contained in the statute—whether a defendant is guilty of committing an offense involving the use of a weapon if his cocomplicitor, rather than himself, personally used the weapon—is an ambiguity which must be resolved in the appellee's favor. As we construe the statute, we hold that the term "use" means "personal use," not vicarious usage. If the legislature wishes to broaden the scope of the statute so as to allow one defendant's use of a weapon to be imputed to another defendant, it is within its prerogative to do so. Nevertheless, as the statute is written, it must be construed strictly in favor of the appellee.

Courts in other jurisdictions have construed the term "use" in similar statutes to mean personal use. In *State v. Hicks*, 38 Or.App. 97, 589 P.2d 1130 (1979), the Oregon Court of Appeals interpreted a similar statute as precluding vicarious liability. There, the defendant was given an enhanced prison term as a result of a finding that he had been armed during the commission of a rape. Nevertheless, from the evidence, it was undisputed that a codefendant, and not the defendant, was the individual armed during the rape and robbery. The Court ruled that the defendant's sentence could not be enhanced under a statute which provided, in part, as follows:

> Any person who commits ... any felony while armed with any pistol, revolver ... shall in addition to the punishment prescribed for the crime of which he has been convicted, be punished by imprison-

ment ... for not more than ten years. *Id.* at p. 1130.

In so ruling, the Court made a critical distinction between a criminal statute which allows a defendant to be found guilty of a crime based on the conduct of another—a complicity statute—and an enhancement provision of a penalty statute which merely enhances the penalty involved:

> Second, the general statutory basis for vicarious liability in the criminal law is ORS 161.150, which provides:
>
> "A person is guilty of a crime if it is committed by his own conduct or by the conduct of another person for which he is criminally liable, or both."
>
> This statute provides that a person can be "guilty of a crime" based on the conduct of another. But as *State v. Blacker*, 234 Or. 131, 134, 380 P.2d 789 (1963), points out, ORS 166.230 does not create a crime, but only provides for an enhanced penalty. We are unaware of any statutory basis for vicarious enhancement of a penalty. *Id.* at p. 1131.

Other courts have made a similar distinction and have disallowed any attempt to create vicarious liability under enhancement provisions of a penalty statute. *See State v. Thompson*, 101 Idaho 430, 614 P.2d 970 (1980); *People v. Walker*, 18 Cal.3d 232, 133 Cal.Rptr. 520, 555 P.2d 306 (1976).

The *Walker* Court, in analyzing the distinction between the crime and the resulting punishment, stated in part as follows:

> [I]f a statute is intended to impose a derivative liability on some person other than the actor, there must be some legislative direction that it is to be applied to persons who do not themselves commit the proscribed act. Such a direction is found in section 31 which fixes responsibility on an aider and abettor for a crime personally committed by a confederate. But the statute which defines aiders and abettors as principals in the commission of a criminal offense does not also purport to impose additional derivative punishment grounded on an accomplice's

**138**

personal conduct, as those statutes which provide for such increased punishment "do not define a crime or offense but relate to the penalty to be imposed under certain circumstances." ... Hence, the rules which make an accused derivatively liable for a crime which he does not personally commit, do not at the same time impose a derivatively increased punishment by reason of the manner in which a confederate commits the crime. *Id.* 18 Cal.3d 241–242, 133 Cal.Rptr. 525, 555 P.2d 311.

*See also Earnest v. State,* Fla., 351 So.2d 957 (1977).

■ Given the ruling of the Court in *Fultz, supra,* as well as the specific language of the Court in *Haymon, supra,* we uphold the order of the trial court granting the appellee probation. Although the appellee argues that the Commonwealth improperly relied on hearsay evidence in supporting its argument that the appellee should be denied probation, we find such argument moot given our ruling herein.

The order of the trial court is affirmed.

All concur.